SAMUEL L. GROSS & others vs. SADIE H. MILLIGAN.

Middlesex. March 22, 1900. — October 15, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Mortgage — Equity — Decree — Principal and Agent — Statute of Frauds — Consideration.*

In this case, which was a suit in equity to obtain the execution of a release of a portion of the land included in a mortgage, the evidence warranted the decree for the plaintiffs.

If a mortgagor of land, in order to free certain lots from the mortgage, having applied for a loan to be secured by a mortgage of the balance of the land, consents to the loan being carried through by an assignment to the lender of the original mortgage and by giving a second mortgage excluding the lots in question, upon the assurance of the lender's agent, who conducts the negotiations, that those lots will be released as soon as the second mortgage is executed, the lender cannot set up the statute of frauds in defence of a suit in equity to obtain the release; and the objection that there is no consideration for the agent's promise, but that the consideration is the money named in the mortgage, and that is expressed in writing and cannot be added to or contradicted, is untenable.

BILL IN EQUITY, filed July 29, 1898, in the Superior Court, by Samuel L. Gross, Alonzo Stouch, and Kurwin L. Eisenhart, doing business under the name of La Buta Cigar Company, Sylvester G. Bennett and Sarah A. Bennett, his wife, to obtain the execution of a release of certain lots of land in Everett from a mortgage. At the hearing a decree for the plaintiffs was entered; and the defendant appealed to this court. The facts appear in the opinion.

*G. C. Abbott,* for the defendant.

*G. E. Smith & W. F. Garcelon,* for the plaintiffs.

LORING, J. We are of opinion that the decree of the Superior Court should be affirmed. The plaintiff introduced evidence of the following facts: That in September, 1897, the plaintiff, Sylvester G. Bennett, in behalf of his wife, in whose name the land, hereinafter spoken of, stood, applied to one George C. Abbott for a loan of $3,000, to be secured by a first mortgage on certain land in the town of Everett; he told Abbott that there was at that time a mortgage on the land, held by the Malden Savings Bank; that this mortgage covered not only

the parcels of land which his wife wished to mortgage as security for the loan of $3,000, but also four other lots of land which had been mortgaged or conveyed to others after the mortgage was given to the Malden Savings Bank, and which were not to be included in the mortgage to secure the loan in question; three of them had been mortgaged to the La Buta Cigar Company, and the fourth had been sold and conveyed to one Blaisdell. The plaintiff testified that his purpose in getting the new loan was to get these four lots freed from the incumbrance of the Malden Savings Bank mortgage. The application was first made to Abbott in his office. Abbott then said that he knew a party who might lend the money, and that he would find out in a few minutes; he then went to the telephone and spoke with some one, came back and said " it was all right if the security was sufficient; " that the witness, Sylvester G. Bennett, and Abbott then made an appointment to meet on the land; they met there, and the witness pointed out the boundaries of the tract of land covered by the mortgage of the Malden Savings Bank, the boundaries of the Blaisdell lot, and of the three La Buta lots, which had been conveyed or mortgaged by the Bennetts after their mortgage to the Malden Savings Bank, and explained the whole situation to Abbott; he also pointed out a Peach lot, so called, which had been released from the Malden Savings Bank mortgage after the execution of that mortgage and was to be excepted out of the new mortgage. The witness soon after received from Abbott a mortgage deed to be executed by him and his wife, conditioned for the payment of $1,032.65; the description of the land covered by the mortgage excluded the three La Buta lots and the Peach lot, and excepted the Blaisdell lot, which was included in the general description of the land covered by the mortgage. On receiving this deed the witness called upon Abbott for an explanation; Abbott then told him that he thought the mortgagee would get a better title by taking an assignment of the Malden Savings Bank mortgage and lending on a new mortgage the balance of the $2,700 which the plaintiffs had agreed to take in place of the $3,000 originally applied for, after deducting the amount due on the Malden Savings Bank mortgage, and that he had had the Malden Savings Bank mortgage assigned to the defendant. The witness objected

to that arrangement on the ground that if the loan was carried through in that way he would not get the three La Buta lots and the Blaisdell lot freed from the Malden Savings Bank mortgage ; thereupon Abbott said that the mortgagee would release these four lots when the mortgage to the defendant, the second mortgage, was executed. The witness then asked Abbott if he had the releases of the four lots ready ; Abbott said that he would have them ready when the second mortgage was executed and the papers passed. When the time came to pass the papers Abbott said that he had forgotten to draw these releases, but that he would do so ; the witness objected to passing the papers until the releases had been made and executed ; Abbott then said that he would draw the releases and have them executed as soon as he could see the defendant ; relying on that statement the witness and his wife delivered the mortgage for $1,032.65, and received the amount thereof, being the balance of the $2,700 after deducting the amount due on the Malden Savings Bank mortgage and the amount of Abbott's bill for looking up the title and drawing the papers. A few weeks afterwards, no releases having been executed by the defendant, Sylvester G. Bennett and the plaintiff Eisenhart, one of the partners in the La Buta Cigar Company, called upon Abbott, and Abbott then admitted that the original agreement, made when the mortgage to the defendant was taken, contemplated these three parcels of land covered by the mortgage to the La Buta Cigar Company being released, and that the only reason why they had not been released was that he, Abbott, had not been paid for drawing the papers.

All this evidence was denied by Abbott in his testimony. Without stating at length Abbott's version of the case, it is enough to say that we are of opinion that the judge who heard the suit was warranted in believing the plaintiff and not believing Abbott ; and we see no reason for setting aside his finding on that point.

In addition to the objection that the judge should have made a general finding for the defendant on all the evidence, the defendant has made several other objections to the decree made by the Superior Court. First, that Abbott had no authority to make a promise in behalf of the mortgagee that these four lots should

be released.　It appeared that all the negotiations were had and the transaction was carried through by Sylvester G. Bennett and Abbott, and that Sylvester Bennett's wife did not see Abbott or the defendant, and that the defendant, the mortgagee, did not see either Mr. or Mrs. Bennett in the matter; Abbott testified that he in fact never had any authority from the mortgagee to promise that the release should be executed.　But the plaintiffs' evidence tended to show that Abbott in his interview with Sylvester Bennett and Eisenhart admitted that by the terms of the agreement under which this loan was made it was stipulated that these lots were to be released; the judge was warranted in finding on this admission and the other evidence that the loan which was accepted was a loan on the land exclusive of the three La Buta lots and the Blaisdell lot, and that when that loan was carried through by an assignment of the Malden Savings Bank mortgage the defendant became bound to release the four lots of land; in such a case there is no question of Abbott's authority to agree to release the four lots; she was bound to do so as the result of the way which was adopted of carrying through the loan which it was agreed should be made.　In addition to this, the defendant was not present at the hearing; it appeared that she was a woman of forty-five or fifty years of age, living in Newton; that within two or three weeks she had been told that the case was assigned for hearing on the day on which it was heard; and that there was no physical reason why she should not be present.

The defendant's second objection is, that the promise relied on is a promise within the statute of frauds, and it appeared that it was given by word of mouth only.　But the Bennetts, whose purpose in getting the loan of $2,700 was to free the four lots from the incumbrance of the Malden Savings Bank mortgage, gave their consent to that loan being carried through by an assignment to the defendant of that mortgage, which covered those four lots, and by giving a second mortgage on the land excluding the four lots in question, on Abbott's statement that the four parcels were to be released, and that it was by accident that the releases had not then been drawn and executed, and that if the papers were then passed they would be drawn and executed without delay; the Bennetts' consent to the loan, which was to

free the four lots from the lien of the Malden Savings Bank mortgagè, being carried through by an assignment of that mortgage to the defendant and the giving of a second mortgage on these assurances, was a change of situation by the plaintiffs within the rule in *Glass* v. *Hulbert*, 102 Mass. 24 ; for that reason it is not now open to the defendant to set up that that promise was not in writing, and that by reason of the statute of frauds it cannot be enforced ; the cases affirming *Glass* v. *Hulbert* are collected in *Low* v. *Low*, 173 Mass. 580.

The other objection is that there is no consideration for this promise ; that the consideration was the money named in the mortgage, and that is expressed in writing and cannot be added to or contradicted.    This is so plainly untenable that no discussion of it is necessary.    *Decree affirmed.*